IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DYSON TECHNOLOGY LIMITED,<br><br>*Plaintiff*,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>*Defendants*. | CIVIL ACTION NO. 1:20-cv-5719<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 1

    A. Dyson owns each of the trademarks asserted in this matter. .............................. 1

    B. The DYSON Trademarks have been willfully infringed by Defendants. ........... 2

    C. Defendants were properly served with process, but have failed to timely appear, answer, or otherwise respond to Dyson's claims. ................................ 4

III. ARGUMENT AND AUTHORITIES ................................................................... 5

    A. This Court has personal jurisdiction over the Defendants. ................................ 5

    B. Dyson is entitled to an entry of default. ............................................................. 6

    C. Dyson is entitled to a default judgment on each cause of action asserted. ........ 7

        1. Dyson's asserted claims have been established as a matter of law. ........ 7

        2. Dyson is entitled to statutory damages. .................................................... 9

        3. Dyson is entitled to a permanent injunction. ......................................... 12

IV. CONCLUSION .................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Bulgari, S.P.A. v. Zou Xiaohong*,
  No. 15-cv-05148, 2015 U.S. Dist. LEXIS 140606 (N.D. Ill. Oct. 15, 2015) ..............11, 13, 14

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)..................................................................................................................5

*Christian Dior Couture, S.A. v. Liu*,
  No. 15 C 6324, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015)...............................6

*Deckers Outdoor Corp. v. Doe*,
  No. 11 C 10, 2011 U.S. Dist. LEXIS 119448 (N.D. Ill. Oct. 14, 2011) ..........................7, 9, 10

*Deckers Outdoor Corp. v. Huan Wu, et al.*,
  No. 15- cv-10152, ECF No. 45 (N.D. Ill. Dec. 22, 2015)...................................................10, 11

*eBay, Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)................................................................................................................12

*Illinois v. Hemi Group LLC*,
  622 F.3d 754 (7th Cir. 2010) ....................................................................................................6

*Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*,
  735 F.3d 735 (7th Cir. 2013) ..................................................................................................13

*Levi Strauss & Co. v. 365 Days Store, et al.*,
  No. 1:19-cv-01768, ECF No. 48 (N.D. Ill. May 30, 2019)......................................................10

*Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*,
  No. 03 C 4986, 2004 U.S. Dist. LEXIS 22563 (N.D. Ill. Nov. 8, 2004)......................9, 10, 12

*Luxottica Grp. S.p.A., et al. v. ZhouLiang, et al.*,
  No. 1:19-cv-00564, ECF No. 47 (N.D. Ill. Apr. 9, 2019)........................................................10

*Luxottica Grp. S.p.A. v. Light in the Box Ltd.*,
  No. 16-cv-05314, 2016 U.S. Dist. LEXIS 144660 (N.D. Ill. Oct. 19, 2016) ............7, 8, 13, 14

*Luxottica USA LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*,
  No. 14 c 9061, 2015 U.S. Dist. LEXIS 78961 (N.D. Ill. June 18, 2015) ................................12

*Microsoft Corp. v. Rechanik*,
  249 F. App'x 476 (7th Cir. 2007) .............................................................................................8

*Miyano Mach. USA, Inc. v. Miyanohitec* Mach*., Inc.*,
  576 F. Supp. 2d 868 (N.D. Ill. 2008) ................................................................................14

*Monster Energy Co. v. Meng Chun Jing*,
  No. 15 C 277, 2015 U.S. Dist. LEXIS 86956 (N.D. Ill. Jul. 6, 2015) ...........................9, 10, 11

*Monster Energy Co. v. Chen Wensheng*,
  136 F. Supp. 3d 897 (N.D. Ill. 2015) ................................................................................5, 6

*Phillip Morris USA Inc. v. Marlboro Express*,
  No. CV-03-1161 (CPS) 2005 U.S. Dist. LEXIS 40359 (E.D.N.Y. Aug. 26,
  2005) ..................................................................................................................................12

*River Light V, L. P., et al. v. Xie Ji Ping, et al.*,
  No. 1:19-cv-00161, ECF No. 46 (N.D. Ill. Mar. 11, 2019) ...............................................10, 12

*Swarovski Aktiengesellschaft, et al. v. Wuhongliu, et al.*,
  No. 1:18-cv- 03480, ECF No. 58 (N.D. Ill. Sept. 18, 2018) ..............................................10, 12

*VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*,
  811 F.3d 247 (7th Cir. 2016) .................................................................................................7

**Statutes**

15 U.S.C. § 115(a) ......................................................................................................................8

15 U.S.C. § 1057(b) ...................................................................................................................8

15 U.S.C. § 1065 ........................................................................................................................7

15 U.S.C. § 1116(a) ..................................................................................................................12

15 U.S.C. § 1117(c) ...............................................................................................................9, 14

**Other Authorities**

Fed. R. Civ. P. 4(f)(3) ................................................................................................................4

Fed. R. Civ. P. 12(a)(1)(A)(i) ................................................................................................4, 6

Fed. R. Civ. P. 55(a) ..............................................................................................................6, 7

## I. INTRODUCTION

When a defendant fails to answer or otherwise defend against the plaintiff's complaint, entry of default must be entered. Under those circumstances, default judgment is appropriate because the facts establishing each cause of action asserted in the Complaint are taken as true. Here, the defendants that are the subject of this motion ("Defendants") were properly served with process pursuant to the Court's order. The time for those Defendants to answer or otherwise respond, however, has expired, and thus, entry of default is required. Similarly, Dyson Technology Limited ("Dyson" or "Plaintiff") has pleaded sufficient facts establishing violations of the Lanham Act and the Illinois Deceptive Trade Practices Act ("IDTPA"). Accordingly, Dyson is entitled to a default judgment against Defendants, an award of statutory damages, and permanent injunctive relief.

## II. STATEMENT OF FACTS

### A. Dyson owns each of the trademarks asserted in this matter.

Dyson is a world-famous technology company that designs, manufactures, and distributes hair care products (such as hair dryers and hair stylers), among other technological goods, worldwide. (Complaint ¶ 10, ECF No. 1; Lane Decl. ¶ 3, ECF No. 17-1.) Dyson was founded in the United Kingdom in 1991. (*Id.* ¶ 4.) Dyson's products can be purchased in over 65 countries around the world. (*Id.*) For its various hair care products, Dyson has also registered and used in commerce numerous trademarks, including the trademarks DYSON, AIRWRAP, and SUPERSONIC (collectively, the "DYSON Trademarks"). (*Id.* at ¶¶ 5-7.) Indeed, Dyson products featuring the DYSON Trademarks have been promoted at significant annual expense to Dyson. (*Id.* at ¶ 8.) As such, the DYSON Trademarks are famous, and consumers understand that Dyson is the source of goods bearing the DYSON Trademarks. (*Id.* at ¶ 10.)

**B. The DYSON Trademarks have been willfully infringed by Defendants.**

Dyson goes to great lengths to protect its brand and DYSON Trademarks from infringement. (Lane Decl. ¶ 11.) In its brand-efforts, Dyson has discovered hundreds, if not thousands, of counterfeit goods sold at physical locations and over the Internet. (*Id.*) Notably, counterfeiters are increasingly selling infringing goods online because they can sell to consumers anywhere and can more easily avoid legal repercussions.

Defendants here are online counterfeiters. Specifically, Defendants operate commercial internet stores (the "Online Stores") listed on virtual marketplaces such as AliExpress, Amazon, eBay, DHgate, and Wish. (*Id.*, Ex. 2.) On those marketplaces, Defendants offer, without authorization, counterfeit products bearing one or more of the DYSON Trademarks for sale in U.S. dollars to consumers located throughout the United States, including in Illinois. (*Id.*; Rankin Decl. ¶ 4, ECF No. 13-1.) The following images contain examples of Defendants' unlawful listings.



2



Without any authorization, these listings use the DYSON Trademarks on products sold well below the cost to manufacture genuine Dyson products. (See Lane Decl. ¶¶ 13-14 & Ex. 2, ECF No. 17-1.)

Defendants do everything possible to avoid legal action. Recognizing that their offers for sale and sales infringe upon Dyson's intellectual property rights, Defendants often identify themselves through random listings of letters and numbers. (See Pls.' Compl. Schedule A, ECF No. 7.) Further, Defendants never provide physical addresses. And as Dyson has learned through extensive research, once counterfeiters such as Defendants are provided notice of legal action, their response is not to appear and defend, but rather, to move assets beyond the Court's reach and to open new stores under new aliases. (Rankin Decl. ¶¶ 5-6, ECF No. 13-1.) To be sure, Defendants operate exclusively through the Internet for that reason.

3

### C. Defendants were properly served with process, but have failed to timely appear, answer, or otherwise respond to Dyson's claims.

As a result of Defendants' unlawful conduct, Dyson filed this suit and sought an Ex Parte Temporary Restraining Order. (Pl.'s Mot. for TRO, ECF No. 12.) After considering the arguments and evidence submitted in support, the Court found (1) that each element required to obtain a temporary restraining order had been established, including that the Court had jurisdiction over each Defendant, (2) that Dyson would likely succeed on the merits of its claims, and (3) that, absent injunctive relief, Dyson would continue to suffer irreparable harm. (TRO at 1-5, ECF No. 19.) The Court also granted Dyson expedited discovery so it could gather additional information concerning Defendants' contact and financial information and granted Dyson's request to serve Process on Defendants electronically pursuant to Federal Rule of Civil Procedure 4(f)(3). (*Id.* at 11.)

After Dyson implemented and served the *Ex Parte* Temporary Restraining Order on the applicable third parties, the Clerk of the Court issued the Summons for purposes of serving Defendants with process. On November 13, 2020 at 7:01 A.M. CST, Dyson served the Summons and Complaint on a group of Defendants (the "Group 1 Defendants"). (Rankin Decl. ¶ 4, a true and correct copy of which is attached as Ex. A.) On November 13, 2020 at 3:55 P.M., Dyson served the Summons and Complaint on a second group of Defendants (the "Group 2 Defendants"). (*Id.* ¶ 5.) And on December 4, 2020 at 10:25 A.M. CST, Dyson served the Summons and Complaint on all remaining and unserved Defendants (the "Group 3" Defendants). (*Id.* ¶ 6) Thus, the deadline for the Group 1 and Group 2 Defendants to answer or otherwise respond to the Complaint was Friday, December 4, 2020. (*Id.* ¶ 8.) And the deadline for the Group 3 Defendants to answer or otherwise respond to the Complaint was Monday, December 28, 2020. (*Id.¶ 9.*) *See* Fed. R. Civ. P. 12(a)(1)(A)(i). As stated in its separately filed Updated Status Report, Dyson has

4

dismissed several Defendants upon reaching settlement with them, and is still negotiating with other Defendants. As of the date of this motion, the following Defendants have failed to answer or otherwise respond to Dyson's Complaint: Vivi_hua, St_sz_eli, Superoneshop, Shop5728262, Shop5730341, Dreamgoal, and WenFran (collectively the "Defaulting Defendants"). (*See id.* ¶ 10.) As a result, Dyson brings this motion and requests entry of default, a default judgment, an award of statutory damages, and permanent injunctive relief.

### III.  ARGUMENT AND AUTHORITIES

#### A.  This Court has personal jurisdiction over the Defendants.

A defendant is subject to this Court's personal jurisdiction if the defendant has sufficient minimal contacts with the State of Illinois such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice. *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 902 (N.D. Ill. 2015). Further, specific personal jurisdiction is established if (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* at 903. As the Supreme Court has held, "a defendant cannot avoid jurisdiction merely because the defendant did not *physically* enter the Forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (emphasis in original).

The Court, as it has already held, has specific personal jurisdiction over the Defendants. (TRO ¶ 1, ECF No. 19.) Defendants operate commercial internet stores on eBay, AliExpress, Amazon, Wish, DHgate, among others. (Compl. Schedule A, ECF No. 7; Lane Decl. Ex. 2, ECF No. 17-2.) Through those stores, which all list products for sale in English and U.S. dollars, each Defendant intentionally offers to sell products that infringe one or more of Dyson's federally registered trademarks. (Complaint ¶ 21, ECF No. 1; Lane Decl. Ex. 2, ECF No. 17-2.) Further, each Defendant intentionally offers the counterfeit goods for sale to consumers in Illinois, and expressly

5

offers and agrees to ship products into Illinois. (Complaint ¶¶ 27-28, ECF No. 1; Lane Decl. Ex. 2, ECF No. 17-2; Rankin Decl. ¶ 4, ECF No. 13-1.) As a result, each Defendant has intentionally directed its activities at Illinois residents and has purposefully availed itself of the privilege of conducting business in the State of Illinois. *See Christian Dior Couture, S.A. v. Liu*, No. 15 C 6324, 2015 U.S. Dist. LEXIS 158225, at *5-7 (N.D. Ill. Nov. 17, 2015). Because requiring Defendants to come to Court to defend their blatant violations of the Lanham Act and the Illinois Deceptive Trade and Practices Act (the "IDPA") does not offend traditional notions of fair play and substantial justice, Defendants are properly subject to personal jurisdiction in this Court. *See id.*; *Illinois v. Hemi Group LLC*, 622 F.3d 754, 758-760 (7th Cir. 2010); *Monster Energy Co.*, 136 F. Supp. 3d at 902.

### B. Dyson is entitled to an entry of default.

Federal Rule of Civil Procedure 55(a) requires the entry of default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Here, in accordance with the Court's order, the Group 1 and Group 2 Defendants were served with the Summons and Complaint on November 13, 2020. (Rankin Decl. ¶¶ 4-5, Ex. A.) Thus, the deadline for the Group 1 and Group 2 Defendants to answer or otherwise respond to the Complaint was December 4, 2020. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). As of the date of this motion, none of the Group 1 Defendants or Group 2 Defendants have answered or otherwise responded or defended against the claims asserted in the Complaint. (Rankin Decl. ¶ 10, Ex. A.)

Similarly, the Group 3 Defendants were served with Summons and the Complaint on December 4, 2020. (*Id.* ¶ 6.) Their deadline to answer or otherwise respond to the Complaint was December 28, 2020. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Again, the Group 3 Defendants did not answer or otherwise respond before that deadline, and as of the date of this motion, the Group 3

6

Defendants have yet to appear, answer, or otherwise defend against the claims asserted in the Complaint. (Rankin Decl. ¶ 10, Ex. A.)

As a result, Dyson requests that entry of default be entered against the Defaulting Defendants. *See* Fed. R. Civ. P. 55(a); *Deckers Outdoor Corp. v. Doe*, No. 11 C 10, 2011 U.S. Dist. LEXIS 119448, at *4-6 (N.D. Ill. Oct. 14, 2011).

### C. Dyson is entitled to a default judgment on each cause of action asserted.

Upon entry of default, the factual allegations set forth in the complaint are taken as true, *and* liability as to each cause of action is established as to each Defaulting Defendant. *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016); *Deckers Outdoor Corp.*, 2011 U.S. Dist. LEXIS 119448, at *4-6. Here, Dyson established through its well-pleaded facts each cause of action asserted in its Complaint. For the reasons set forth in the Complaint and herein, Dyson is entitled to statutory damages and permanent injunctive relief.

#### 1. Dyson's asserted claims have been established as a matter of law.

*In the Complaint, Dyson asserted claims of trademark infringement, counterfeiting,* and false *designation* of origin under the Lanham Act, as well as a violation of the IDTPA, all of which arise from the same set of facts. (Compl. ¶¶ 29-54, ECF No. 1.) Accordingly, the following elements establish each asserted cause of action: (1) the marks are protected under the Act; (2) the defendant is not authorized to use the marks; and (3) the defendant's use of the challenged marks is likely to cause confusion among consumers. *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, No. 16-cv-05314, 2016 U.S. Dist. LEXIS 144660, at *23 (N.D. Ill. Oct. 19, 2016).

Dyson can establish each element from *Luxottica*. First, Dyson owns each of the DYSON Trademarks, most of which have been federally registered and in use for well over five consecutive *years*, making them incontestable. (Lane Decl. ¶ 5, ECF No. 17-1;) 15 U.S.C. § 1065. Dyson's federal registrations further create a presumption that the DYSON Trademarks are valid, and

7

Dyson has the exclusive right to use the DYSON Trademarks in commerce and in connection with all of the goods identified in the registrations. 15 U.S.C. §§ 1057(b) & 115(a). Second, Dyson has reviewed each of the Defendants' Online Stores and provided sworn evidence that none of the Defendants have been authorized to use any of the DYSON Trademarks. (Lane Decl. ¶¶ 12-16, ECF No. 17-1.) Accordingly, Dyson has made the requisite "strong showing" that it can likely establish the first two *Luxottica* elements as they relate to each cause of action. *See Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020); (*see also* TRO at 1-5, ECF No. 19). The same is true of the third *Luxottica* element. In particular, where a defendant is selling counterfeit products that look very similar to the plaintiff's products in an apparent attempt to capitalize on the popularity and demand of another's products, there is a presumption of a likelihood of confusion. *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). The inquiry need go no further at this stage.

But even when considering the traditional seven factors that indicate whether consumer *confusion* exists, the third *Luxottica* element is met. For example, in *Luxottica Grp. S.p.A. v. Light in the Box*, the court found that the following facts demonstrated the likelihood of consumer confusion under the seven-factor analysis: (1) plaintiff's marks are famous and enjoy a high level of consumer recognition; (2) the defendants sold products with marks identical to or substantially indistinguishable from plaintiff's marks; and (3) the defendant sold the same types of products as plaintiff. *Luxottica Grp. S.p.A.*, 2016 U.S. Dist. LEXIS 144660, at *25-26.

As to enjoying a high level of consumer recognition, Dyson has used the DYSON Trademarks, and in particular DYSON, AIRWRAP, and SUPERSONIC, in connection with the sale of Dyson products for decades (DYSON), or at least for several years (AIRWRAP and SUPERSONIC). (Lane Decl. ¶¶ 4-6, ECF No. 17-1.) Indeed, Dyson has advertised those marks

continuously at significant annual expense. (*Id.* at ¶ 8.) As a result of those efforts, Dyson's brand has gained substantial recognition worldwide and resulted in unmeasurable revenue and unsolicited publicity in leading publications and newspapers in the United States and elsewhere around the globe (*Id.* at ¶ 8.) The DYSON Trademarks are famous and enjoy a high level of consumer recognition. (*See id.*)

Knowing that, each Defendant offered for sale and sold the same types of products as plaintiff, which products bear marks that are identical to or substantially indistinguishable from Dyson's federally registered and protected trademarks. (Lane Decl. ¶¶ 13-15 & Ex. 2, ECF Nos. 17-1 & 17-2.) Thus, by demonstrating how Dyson proposes to prove key elements of its case, Dyson has made the requisite strong showing that it will satisfy all three *Luxottica* elements with respect to each cause of action asserted. (TRO at 1-3, ECF No. 19.) As a result, there is a likelihood that Dyson will succeed on the merits of its causes of action.

### 2. Dyson is entitled to statutory damages.

Under the Lanham Act, a plaintiff is entitled to statutory damages for trademark counterfeiting of "not less than $1,000 or more than $200,000 per counterfeit mark, per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). Courts consistently hold that statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is not disclosed. *Deckers Outdoor Corp.*, 2011 U.S. Dist. LEXIS 119448, at *11. Further, if the counterfeiting was willful, as is the case here, statutory damages may be increased up to $2 million. 15 U.S.C. § 1117(c)(2). "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, No. 03 C 4986, 2004 U.S. Dist. LEXIS 22563, at *19-20 (N.D. Ill. Nov. 8, 2004); *see Deckers Outdoor Corp.*, 2011 U.S. Dist. LEXIS 119448, at *11. The

9

knowledge necessary to show willful infringement need not be proven directly, but can be inferred from the defendant's conduct. *See Monster Energy Co. v. Meng Chun Jing*, No. 15 C 277, 2015 U.S. Dist. LEXIS 86956, at *10 (N.D. Ill. Jul. 6, 2015).

Moreover, when considering the amount of statutory damages to be awarded, no rigid formula applies. But courts in the Seventh Circuit do typically consider several factors, including (1) the difficulty or impossibility of proving actual damages, (2) the circumstances of the infringement, and (3) the efficacy of the damages as a deterrent to future infringement. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *19-20; *Monster Energy Co.*, 2015 U.S. Dist. LEXIS 86956, at *10-11; *Deckers Outdoor Corp.*, 2011 U.S. Dist. LEXIS 119448, at *13. These factors weigh in favor of granting to Dyson an award of $1,000,000 in statutory damages against each of the Defaulting Defendants.

In particular, with respect to the Defaulting Defendants, it would be essentially impossible to calculate actual damages. For example, because these Defendants have not appeared or provided their historical sales data, Dyson could not even begin to calculate the actual damage caused by their respective counterfeit sales. This is further exacerbated by the difficulty in ascertaining the damage caused to Dyson's brand and goodwill in the marketplace by virtue of the Defendants' counterfeit sales. (*See, e.g.*, Compl. ¶¶ 34-37, ECF No. 1.) Under identical circumstances, courts have consistently held, including those in this district, that statutory damages should be awarded. *Deckers Outdoor Corp.*, 2011 U.S. Dist. LEXIS 119448, at *11; *See Levi Strauss & Co. v. 365 Days Store, et al.*, No. 1:19-cv-01768, ECF No. 48 (N.D. Ill. May 30, 2019); *Luxottica Grp. S.p.A., et al. v. ZhouLiang, et al.*, No. 1:19-cv-00564, ECF No. 47 (N.D. Ill. Apr. 9, 2019); *River Light V, L. P., et al. v. Xie Ji Ping, et al.*, No. 1:19-cv-00161, ECF No. 46 (N.D. Ill. Mar. 11, 2019); *Swarovski Aktiengesellschaft, et al. v. Wuhongliu, et al.*, No. 1:18-cv- 03480, ECFNo. 58 (N.D.

Ill. Sept. 18, 2018); *Deckers Outdoor Corp. v. Huan Wu, et al.*, No. 15- cv-10152, ECF No. 45, (N.D. Ill. Dec. 22, 2015).

Similarly, the circumstances of the Defaulting Defendants' counterfeiting and infringement have been consistently held to support a high statutory damages award. *See Deckers Outdoor Corp. v. Huan Wu, et al.*, No. 15-cv-10152, ECF No. 45, (N.D. Ill. Dec. 22, 2015). Dyson has used the DYSON Trademarks in connection with the sale of luxury hair care devices for decades. (Lane Decl. ¶¶ 4, 7, ECF No. 17-1.) Indeed, Dyson has extensively promoted Dyson products at significant annual expense. (*Id.* ¶ 8.) As the result of Dyson's exclusive and extensive use of the DYSON Trademarks, Dyson is recognized as the source of any products bearing one or more of the DYSON Trademarks. (*Id.* ¶ 10.) Due to the worldwide public acceptance, overwhelming fame, and great recognition of products bearing or sold under the DYSON Trademarks, these trademarks have come to represent an enormous amount of goodwill for Dyson and have caused goods bearing the DYSON Trademarks—even unauthorized goods—to be in great demand. (*Id.*) The DYSON Trademarks are unquestionably famous and enjoy a high level of consumer recognition. (*Id.*)

With both actual and constructive knowledge of Dyson's federally registered and protected trademark rights, the Defaulting Defendants deliberately designed their online marketplaces to appear to be selling authentic Dyson products, tricking unknowing customers and creating consumer confusion in the process. (*Id.* ¶ 15.) The damage to and erosion of the DYSON Trademarks and Dyson's goodwill in the marketplace is worsened by the fact that the Defaulting Defendants sell their products through online marketplaces such as Amazon, DHgate, eBay, Wish, and AliExpress, allowing them to reach a worldwide customer base. *See Bulgari, S.P.A. v. Zou Xiaohong*, No. 15-cv-05148, 2015 U.S. Dist. LEXIS 140606, at *7 (N.D. Ill. Oct. 15, 2015). Again, under virtually identical circumstances, courts have held that such counterfeiting is willful and

deserving of a high statutory damages award, and the same result is warranted here. *See Monster Energy Co.*, 2015 U.S. Dist. LEXIS 86956, at *10-12; *Deckers Outdoor Corp. v. Huan Wu, et al.*, No. 15-cv-10152, ECF No. 45, (N.D. Ill. Dec. 22, 2015).

A high statutory damages award is also required here to act as a deterrent to future infringement. Indeed, it is appropriate to impose statutory damages in an amount such that they both penalize the infringer and deter future violations when the infringement is willful, as is the case here. *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *17. Here, the Defaulting Defendants have knowingly sold counterfeit goods in violation of Dyson's trademark rights, and have sold their counterfeit goods through online marketplaces that permit them an opportunity to infringe on a worldwide scale. (Compl. ¶¶ 26-28, ECF No. 1.) The Defaulting Defendants' failure to respond or defend against Dyson's asserted claims is further justification for awarding a high statutory award that will sufficiently act as a deterrent to further behavior. *See Phillip Morris USA Inc. v. Marlboro Express*, No. CV-03-1161 (CPS), 2005 U.S. Dist. LEXIS 40359, at *28 (E.D.N.Y. Aug. 26, 2005). Accordingly, as a result of the Defaulting Defendants' willful counterfeiting and infringement, Dyson respectfully requests an award of $1,000,000 against each Defaulting Defendant, which is again consistent with other awards granted under the same circumstances. *River Light V, L. P., et al. v. Xie Ji Ping, et al.*, No. 1:19-cv-00161, ECF No. 46 (N.D. Ill. Mar. 11, 2019); *Swarovski Aktiengesellschaft, et al. v. Wuhongliu, et al.*, No. 1:18-cv-03480, ECF No. 58 (N.D. Ill. Sept. 18, 2018).

### 3. Dyson is entitled to a permanent injunction.

The Lanham Act expressly enables district courts to grant injunctive relief against infringing and counterfeiting parties. 15 U.S.C. § 1116(a). Further, a permanent injunction should be awarded upon a showing that, (1) the plaintiff has suffered an irreparable injury, (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury,

(3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Luxottica USA LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 14 c 9061, 2015 U.S. Dist. LEXIS 78961, at *9 (N.D. Ill. June 18, 2015). According to the Seventh Circuit, "irreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand [during] a nontrivial period of consumer confusion, (and the interval between the filing of a trademark infringement complaint and a final judgment is sure not to be trivial.)." *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013). This is especially true when the plaintiff has spent significant sums promoting its trademarks only to have a counterfeiter sell the same types of goods using the same or substantially indistinguishable marks. *Id.* Such conduct unmistakably causes unquantifiable loss of goodwill and brand dilution, resulting in irreparable harm. *Luxottica Grp. S.p.A.*, 2016 U.S. Dist. LEXIS 144660, at *16-17; *Bulgari, S.p.A.*, 2015 U.S. Dist. LEXIS 140606, at *8-9 (N.D. Ill. Oct. 15, 2015).

Absent a permanent injunction, Dyson has and will continue to suffer irreparable harm to which there is no other adequate remedy at law. For decades, Dyson has promoted its products at significant, annual expense. (Compl. ¶¶ 12, ECF No. 1; Lane Decl. ¶ 8-9, ECF No. 17-1.) As a result, the DYSON Trademarks have significant economic value to Dyson and have made Dyson the identifiable source of goods bearing those marks. (Compl. ¶ 18, ECF No. 1;) *see Luxottica Grp. S.p.A.*, 2016 U.S. Dist. LEXIS 144660, at *16. Accordingly, when each Defendant offers to sell or sells hair care devices with the same or substantially similar marks as a DYSON Trademark, the Defendants are selling inferior products in an effort to capitalize on the popularity of DYSON

13

Trademarks. (*See* Compl. ¶¶ 19-21, ECF No. 1.) In doing so, each Defendant is causing unquestionable damage to Dyson's goodwill that cannot be quantified. Thus, Dyson is suffering the very type of irreparable harm for which no other adequate remedy can cure other than the requested permanent injunction. *See Bulgari, S.p.A.*, 2015 U.S. Dist. LEXIS 140606, at *8-9.

The balance of harms and the public interest similarly weigh heavily in favor of granting a permanent injunction against the Defaulting Defendants. As set forth above, Dyson has suffered irreparable harm in the form of, among other things, loss of business reputation, goodwill, and control over the quality of the products bearing its DYSON Trademarks. (*See* Lane Decl. ¶¶ 16-18, ECF No. 17-1;) *Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.*, 576 F. Supp. 2d 868, 888 (N.D. Ill. 2008). On the other hand, the harm to the Defaulting Defendants is purely economical, and the funds at issue are those gained through its unlawful activity. The Defaulting Defendants, however, assumed that risk when it decided to market and sell counterfeit goods, and thus, it is not the type of harm that counsels against awarding a permanent injunction. *See Luxottica Grp. S.p.A.*, 2016 U.S. Dist. LEXIS 144660, at *28. As a result, the balance of harms weighs heavily in Dyson's favor.

Similarly, the enforcement of trademark laws prevents consumer confusion, and thus, serves the public interest. *Miyano Mach. USA, Inc.*, 576 F. Supp. 2d at 889. Accordingly, the effects on non-parties, like all other factors, weigh in favor of issuing the requested permanent injunction against the Defaulting Defendants.

**IV.     CONCLUSION**

Based on the foregoing and consistent with previous similar cases, Dyson respectfully requests that this Court grant Dyson's motion in its entirety, enter default against each Defaulting Defendant, enter a default judgment against each Defaulting Defendant, award statutory damages in the amount of one million dollars ($1,000,000) per Defaulting Defendant pursuant to 15 U.S.C.

14

§ 1117(c), order that all funds associated with the Defaulting Defendants that have been frozen pursuant to the Court's orders be transferred to Dyson to satisfy the default judgment, order permanent injunctive relief against each Defaulting Defendant, and grant Dyson all other relief to which it is entitled.

Dated: June 25, 2021

      /s/ Mark Ratway
**Shima S. Roy**
shima.roy@bakermckenzie.com
**BAKER & McKENZIE LLP**
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
Telephone: 312-861-8000
Facsimile: 312-861-2899

**Dyan M. House** (admitted pro hac vice)
dyan.house@bakermckenzie.com
**Mark Ratway** (admitted pro hac vice)
mark.ratway@bakermckenzie.com
**Karen Hays** (admitted pro hac vice)
karen.hays@bakermckenzie.com
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, Texas, 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099

ATTORNEYS FOR DYSON TECHNOLOGY LIMITED

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of June, 2021, the undersigned caused to be served Dyson's Memorandum in Support of Motion for Entry of Default and Default Judgment on the Defendants by emailing a true and correct copy of this document to the email addresses that have been provided by third parties pursuant to the Court's *Ex Parte* Temporary Restraining Order.

      */s/ Mark Ratway*
      Mark Ratway
      Attorney for Plaintiff